## S.F.H., INC. (FORMERLY SAM FORTAS HOUSEFURNISHING COMPANY, INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2352–67. Filed October 8, 1969.

*Arthur S. O'Neill, Jr.*, for the petitioner.
*Albert Squire*, for the respondent.

WITHEY, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year ended June 30, 1962, in the amount of $109,182.23.

After concessions by the parties on several issues, there remains for decision only the question of whether respondent properly disallowed petitioner's net operating loss carryover from the prior taxable year purusant to section 382(a)[1] in computing petitioner's net operating loss deduction for 1962.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

FINDINGS OF FACT

All of the facts having been stipulated, they are so found.

S.F.H., Inc. (formerly Sam Fortas Housefurnishing Co., Inc.), hereinafter referred to as petitioner, filed its Federal corporate income tax return for the taxable year ended June 30, 1962, with the district director of internal revenue, Philadelphia, Pa.

Petitioner had for many years engaged in the business of selling furniture at retail in Memphis, Tenn. It filed its corporate tax returns on the basis of a taxable year ended June 30, and reported income from sales in accordance with the installment method of accounting.

For the taxable year ended June 30, 1961, petitioner incurred a net operating loss of $167,807.18, which arose from the operation of the retail furniture business. After carrybacks, there remained $159,830.76 for carryover to future years.

As of July 1, 1961, all of petitioner's outstanding capital stock was owned by Son-Mark Industries, Inc. On August 11, 1961, Son-Mark Industries, Inc., sold, in an arm's-length sale, all of petitioner's capital stock to Chester Tricot Mills, Inc., whose name was later changed to Merion Securities, Inc. (hereinafter referred to as Merion).

On October 27, 1961, Merion acquired control of Mount Clemens Metal Products Co., a Michigan corporation (hereinafter referred to as Mount Clemens). On the same date, petitioner sold all of its assets, subject to all its liabilities, to Mount Clemens for cash, and then immediately purchased 85,000 shares of the stock of Mount Clemens from Merion.

After October 27, 1961, and on June 30, 1962, petitioner had no assets with which to carry on the retail furniture business, the only assets owned by the petitioner being 85,000 shares of Mount Clemens stock, cash of less than $1,000 and a claim for refund of Federal income tax in the amount of $6,480.59.

For the year ended June 30, 1963, and until its liquidation for the year ended June 30, 1964, petitioner had no gross income and only the following deductions:

| | Year ended June 30— | |
| --- | --- | --- |
| | 1963 | 1964 |
| Professional fees | $100.00 | $75.00 |
| Insurance | | 20.70 |
| Miscellaneous | 41.60 | |
| Total deductions | 141.60 | 95.70 |

On its income tax return for the year ended June 30, 1962, petitioner reported gross profit from sales of $349,508.67. This consisted of $131,448.11, gross profit from current year's sales, and $218,060.56,

gross profit from prior years' sales realized in the current year, by way of either current year's collections, or the disposition by petitioner on October 27, 1961, of all of its installment accounts receivable to Mount Clemens.

On its income tax return for the year ended June 30, 1962, petitioner claimed a net operating loss deduction of $133,398.08, comprised entirely of a net operating loss carryover from the year ended June 30, 1961.

In his notice of deficiency, respondent disallowed this net operating loss deduction with the following explanation:

Within your taxable year ended June 30, 1962, all your capital stock was purchased by new owners, Chester Tricot Mill, Inc., and by the end of said taxable year ended June 30, 1962, you had ceased to carry on the retail furniture business heretofore conducted by you. Accordingly, under the provisions of section 382(a) of the Internal Revenue Code of 1954, the net operating loss carryover from prior taxable years had been disallowed as a deduction in the year ended June 30, 1962.

## OPINION

The issue presented in this case is whether section 382(a)[2] applies to disallow petitioner's net operating loss carryover under the following circumstances: Petitioner had been actively engaged in the retail furniture business for a period of years. On August 11, 1961, the stock of petitioner was sold in an arm's-length sale to Merion. Thereafter, on October 27, 1961, Merion acquired control of Mount Clemens, and had petitioner sell all its assets to Mount Clemens for cash, which cash petitioner used to immediately purchase 85,000 shares of Mount Clemens stock from Merion. Petitioner then ceased to actively operate the retail furniture business, and conducted no other trade or business

---

[2] SEC. 382. SPECIAL LIMITATIONS ON NET OPERATING LOSS CARRYOVERS.

  (a) PURCHASE OF A CORPORATION AND CHANGE IN ITS TRADE OR BUSINESS.—

    (1) IN GENERAL.—If, at the end of a taxable year of a corporation—

      (A) any one or more of those persons described in paragraph (2) own a percentage of the total fair market value of the outstanding stock of such corporation which is at least 50 percentage points more than such person or persons owned at—

        (i) the beginning of such taxable year, or

        (ii) the beginning of the prior taxable year.

      (B) the increase in percentage points at the end of such taxable year is attributable to—

        (i) a purchase by such person or persons of such stock, the stock of another corporation owning stock in such corporation, or an interest in a partnership or trust owning stock in such corporation, or

        (ii) a decrease in the amount of such stock outstanding or the amount of stock outstanding of another corporation owning stock in such corporation, except a decrease resulting from a redemption to pay death taxes to which section 303 applies, and

      (C) such corporation has not continued to carry on a trade or business substantially the same as that conducted before any change in the percentage ownership of the fair market value of such stock,

the net operating loss carryovers, if any, from prior taxable years of such corporation, to such taxable year and subsequent taxable years shall not be included in the net operating loss deduction for such taxable year and subsequent taxable years.

until its dissolution 2 years later. However, for its taxable year ending June 30, 1962, petitioner reported approximately $350,000 in gross income arising from its operation of the retail furniture business for part of the taxable year, and from the deferred-income portion of installment accounts receivable which arose from furniture sales made in prior years, which accounts were either collected during the taxable year or transferred to Mount Clemens.[3] Petitioner's current expenses for 1962, while greater than its profits from current sales, were less than its total reported gross profit because of the recognition of the deferred-income portion of the installment accounts receivable, and it is this excess income against which petitioner seeks to offset its net operating loss carryover.

On the basis of these facts, respondent contends that all the requirements of section 382(a) are satisfied.[4] Petitioner, while not disputing the existence of the requisite percentage change in stock ownership, or that a "purchase" of petitioner's stock was made by the "persons" described in section 382(a)(2), challenges respondent's conclusion that it has not continued to carry on a trade or business substantially the same as that conducted before the change in ownership, as required in section 382(a)(1)(C).

Petitioner, while recognizing that the statute if taken on its face disallows the loss carryovers herein, argues that the legislative history of section 382(a)(1)(C) indicates that Congress did not intend that section to apply under the circumstances presented in this case. We disagree.

Petitioner points to S. Rept. No. 1622, to accompany H.R. 8300 (Pub. L. No. 591), 83d Cong., 2d Sess. (1954),[5] as establishing two

---

[3] Sec. 453(d)(1) provides for the recognition of taxable income upon the sale of an installment obligation.

[4] Respondent makes no alternative contention that sec. 269 is applicable to disallow the net operating loss carryovers, and we do not consider the question.

[5] Under present law where a controlling interest in a corporation is acquired for the purpose of avoiding or evading tax liabilities the Internal Revenue Service may disallow the benefits of a deduction, credit, or disallowance which would otherwise be enjoyed by the acquiring person or corporation. This provision has proved ineffectual, however, because of the necessity of proving that tax avoidance was the primary purpose of the transaction. It has also been so uncertain in its effects as to place a premium on litigation and a damper on valid business transactions.

The House bill added a provision designed to limit undue tax benefits of this character by restricting the amount of net operating loss carryover which may be deducted where 50 percent or more of the participating interest in a corporation was acquired by new owners. Your committee adopted this provision with modifications noted below.

    *        *        *        *        *        *        *

Your committee has adopted a provision *to limit the application of this provision* relating to purchase *to* those areas in which abuse has most often arisen, that is, *the purchase of the stock* of a corporation with a history of losses for the purpose of using its loss carryovers *to offset gains of a business unrelated to that which produced the losses.* Accordingly, your committee has provided that if more than 50 percent of the stock of a corporation is purchased within a 2-year period *and if the corporation thereafter engages in a* different type of business, then the loss carryover *is eliminated.* [Emphasis added.]

main points: First, that the abuse Congress sought to correct by the enactment of 382(a) was the situation where a loss carryover is used to offset gains from a business unrelated to that which produced the loss; and second, that it was intended that section 382(a)(1)(C) apply only where a corporation "engages in a different type of business" after a change in its stock ownership. Thus, petitioner argues, where the loss carryovers are used to offset gains of the same business, and where after the change in ownership a different type of business was not conducted,[6] section 382(a)(1)(C) should not apply.

We think petitioner reads the intent of Congress in regard to section 382(a) too narrowly. We agree with petitioner that a primary concern of Congress was whether there was a *change* in the nature of the taxpayer's business. In addition, however, we think that in order to escape the grasp of section 382(a)(1)(C) it is implicit in that subsection not only that the nature of the business remain unchanged, but also that some form of business operations continue subsequent to change in ownership. *Commissioner* v. *Barclay Jewelry, Inc.*, 367 F. 2d 193, 196 (C.A. 1, 1966), reversing a Memorandum Opinion of this Court. The fact that petitioner has not *changed* its old business, but has instead *abandoned* it does not alter the result under section 382(a), i.e., disallowance of the loss carryover.

The rationale behind a continuity-of-enterprise requirement is not reflected in the legislative history of section 382(a). However, the Court of Appeals for the First Circuit in the *Barclay* case, gave a cogent explanation for such a requirement. In that case, S & S purchased the stock of Barclay Co., a manufacturer of jewelry, and Barclay Jewelry, Inc., the taxpayer, a wholesaler of jewelry and principal customer of Barclay Co. After the stock purchases, S & S sold the Barclay Co. products through their own agency, and the taxpayer, although remaining in existence, neither did nor attempted any business. After approximately 2 years, taxpayer was reactivated to sell jewelry as before, and produced a profit to which it sought to apply the operating loss shown on its books before its purchase by S & S. Discussing the continuity requirement, the court stated:

We read the statute as providing that only those persons who purchased *with the intention of carrying on the business* and using the loss deduction, and who, therefore, presumably, in agreeing on a purchase price, compensated the persons who suffered the loss, can obtain the deduction. Rather than place upon the Commissioner the burden of proving the purchaser's subjective intent at the time of the purchase, Congress required the purchaser to demonstrate his intent by *actually continuing the business.* * * * [Emphasis added.]

---

[6] Petitioner asserts that after the sale of its assets it did not carry on *any* trade or business. Cf. Rev. Rul. 67–186, 1967–1 C.B. 81.

At a minimum, it is thus clear that the statute requires that the corporation *continue* the old business.[7]

The net operating loss deduction, as other income tax deductions, reflects an act of legislative grace. *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934); *Deputy* v. *du Pont*, 308 U.S. 488 (1940). The availability of any particular deduction may be conditioned by Congress upon compliance with statutory requirements which it sees fit to enact thereon. Section 382(a) provides a limitation upon the use of a corporation's net operating loss carryovers in the computation of its net operating loss deduction where there is a substantial change in the stock ownership of that corporation. Congress, in effect, stated in section 382(a) that a corporation which experiences a substantial change in its stock ownership may enjoy the benefit of its net operating loss carryovers *only if* it continues to carry on substantially the same trade or business as that conducted before the change in ownership. Petitioner has failed to comply with this statutory directive.

Although the precise issue before us is one of first impression, the courts have considered the situation where an active business becomes inactive prior to a change in control thereof, followed by the reactivation of the same line of business (*Glover Packing Co. of Texas* v. *United States*, 328 F. 2d 342 (Ct. Cl. 1964); *Fawn Fashions, Inc.*, 41 T.C. 205 (1963); sec. 1.382(a)–1(h)(6), Income Tax Regs.), as well as the situation where an active business experiences a change in control followed by a period of inactivity, and then reactivates the old line of business (*Commissioner* v. *Barclay Jewelry, Inc., supra*), concluding in both instances that the continued carrying on of a substantially similar business for purposes of section 382(a)(1)(C) had not occurred. We see no reason why the conduct of an active business prior to a change in control, followed by *permanent inactivity*, is any less a failure to continue to carry on a substantially similar business within the intendment of section 382(a)(1)(C).

We therefore hold that section 382(a) is applicable herein to disallow petitioner's net operating loss carryovers.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DRENNEN, *J.*, concurring: I agree with Judge Fay that this is not the type of situation which Congress had in mind when it enacted section 382(a) to discourage trafficking in loss carryovers; however, I must agree with the majority that the statute as written requires the dis-

---

[7] The question of what constitutes such a continuation, as distinguished from the inauguration of a new enterprise, see, for example, *Glover Packing Co. of Texas* v. *United States*, 328 F. 2d 342 (Ct. Cl. 1964), does not concern us in this case as petitioner concedes that after the change in ownership it carried on *no* trade or business.

allowance of the loss carryover, where there has been the requisite change of ownership, unless the corporation continues to carry on a trade or business substantially the same as the business which produced the loss *at the end of the taxable year of the corporation.* Were it not for the fact that the taxpayer here sold all of its receivables as well as its other business assets prior to the end of its taxable year, I would be inclined to hold that the collection of those receivables as of the end of the taxable years would have furnished sufficient business continuity to meet the requirements of the statute, and the objectives of Congress. However, such was not the case so I must agree with the majority. Furthermore, taxpayer appears to have conceded that it did not carry on any trade or business subsequent to the sale of its assets.

FAY, *J.*, dissenting: In my view, the majority unduly extend the provisions of section 382(a) beyond its intended scope. I think their strict interpretation of section 382(a)(1)(C) ignores the underlying purpose of that provision.

Section 382(a) was enacted to curtail the traffic in net operating losses for the purpose of offsetting income of businesses *unrelated* to those which produced the losses. The congressional intention to limit the application of section 382(a) to situations in which the income and losses arise from unrelated businesses is plainly revealed in the committee reports.[1]

In the case at bar, however, the income in question was undeniably derived from the *same* business that produced the operating losses for which petitioner seeks a net operating loss carryover. Petitioner's gross income during the taxable year at issue was primarily attributable to the collection in that year of accounts receivable which had been created during prior years, and to installments received and reported during the taxable year in question pursuant to section 453. The balance of its gross income was derived from sales made during its taxable year ended June 30, 1962. All the income attributable to such sales was absorbed by expenses incurred during the same period so that the reported net income for the taxable year in question was attributable solely to the aforementioned payments on accounts receivable and installment obligations. Under such circumstances, I would not disallow a net operating loss carryover to petitioner. I think that the condition contained in section 382(a)(1)(C) has not been met in the instant case and that section 382(a) is therefore inapplicable.

Section 382(a)(1)(C) provides that a net operating loss carryover shall be disallowed only if "such corporation has not continued to carry on a trade or business substantially the same as that conducted before

---

[1] S. Rept. No. 1622, 83d Cong., 2d Sess., (1954). See fn. 5 in the majority opinion which sets forth the text of this report.

any change in the percentage ownership." Where the new owners do not initiate a new business and instead the corporation continues to derive all of its income solely from the business conducted in prior years, I would readily conclude that the corporation continued to carry on the same trade or business within the intendment of section 382 (a) (1) (C).[2]

The majority suggest that their holding is required by this Court's prior holding in *Fawn Fashions, Inc.*, 41 T.C. 205 (1963), and by *Commissioner* v. *Barclay Jewelry, Inc.*, 367 F. 2d 193 (C.A. 1, 1966), involving the reactivation of a dormant business following a change in ownership of a corporation. These cases have disallowed the claimed net operating loss carryover, under section 382(a). See also sec. 1.382 (a)–1(b) (6), Income Tax Regs.

While I agree with the reactivation cases, I think that they are both conceptually and factually distinguishable from the case at bar, and any reliance upon them is misplaced. Therefore, I feel that a fresh consideration of the applicability of section 382(a) to the facts herein presented is in order.

In the case of a business which is dormant at the time a change in ownership takes place but which is subsequently revived by the new owners, the denial of a net operating loss carryover is clearly warranted because, as the Court pointed out in *Barclay*, the taxpayer seeks to gain the benefit of operating losses incurred in a prior business by offsetting such losses against income generated by a "different business." The reactivated business, albeit similar in type to the defunct business, can nevertheless be appropriately termed unrelated to such business because of the lack of continuity between them. A change in business may be in the temporal rather than qualitative dimension. *Commissioner* v. *Barclay Jewelry, Inc., supra* at 196. By applying section 382(a) to reactivation situations, the effort has been to prevent the trafficking in net operating losses *within the same industry* which, clearly, is within the framework of and intent of section 382. *Clarksdale Rubber Co.*, 45 T.C. 234, 245 (1965). Significantly, however, the instant case involves a *single* business operation since no reactivation took place. This salient feature, in my mind, sharply distinguishes the reactivation cases from the case at bar. Unlike *Barclay* and *Fawn Fashions*, the income which petitioner seeks to offset by the operating losses of prior years was generated by the *same* and not an unrelated or different business. I think that section 382(a) cannot apply to a case in which the income sought to be offset consists solely

[2] I do not regard petitioner's statement on brief that the prior business activities were discontinued as a concession by him that this statutory requirement was not met. I think petitioner's statement alluded to the facts rather than the legal conclusions to be drawn therefrom.

of income realized in prior years, the recognition of which was deferred to the taxable year in question.

A second rationale suggested in *Barclay* for restricting the allowance of a net operating loss carryover to cases in which the business continues to operate after the change in ownership is that the purchaser, who is to derive the benefit of the net opearting loss carryover, "presumably, in agreeing on a purchase price, compensated the persons who suffered the loss." In the instant case, since the collection of accounts receivable and installment payments was, in all probability, anticipated at the time of the change in ownership, petitioner likewise compensated the seller for the net operating loss carryover and therefore should not be denied a net operating loss on this basis either.

The inapplicability of section 382(a) to the instant case is also strongly supported by the regulations thereunder. Section 1.382(a)–1(h) (7) provides:

(7) A corporation has not continued to carry on a trade or business substantially the same as that conducted before an increase in the ownership of its stock if the corporation discontinues more than a minor portion of its business carried on before such increase. *In determining whether the discontinued activities are more than "minor" for purposes of the preceding sentence, consideration shall be given to whether the discontinuance of the activities has the effect of utilizing loss carryovers to offset gains of a business unrelated to that which produced the losses.* \* \* \* [Emphasis added.]

Thus, under the regulations, the corporation is treated as not having continued to carry on a trade or business only if the discontinuance of a portion of such business has the effect of utilizing loss carryovers to offset gains of a business unrelated to that which produced the losses. No meaningful distinction can be drawn between a partial discontinuance and a complete discontinuance of business activities in this respect. Since the income, in this case, was generated by the same business as the losses in question, it follows that section 382 is inapplicable. The mechanical approach to section 382(a) (1) (C) adopted by the majority is thus clearly rejected by the regulations.

I think that the denial of a net operating loss carryover in the final year of a business, in which no portion of the reported income is attributable to an unrelated business but rather to business operations of prior years, under section 382(a), goes beyond the intent of Congress in its enactment of section 382(a). Recognizing that the construction placed upon section 382(a) by the majority may be consistent with a narrow reading of the statutory language, I think it entirely unfaithful to the spirit of that section as expressed in the committee reports. I think that the instant case is fundamentally outside the scope of section 382 (a) and that section 382(a) (1) (C) must be construed in this perspective.

RAUM, *J.*, agrees with this dissent.